STATE, Respondent, v. STEWART, Appellant.

*No. State 77.   Argued October 5, 1972.—Decided November 9, 1972.*
(Also reported on 201 N. W. 2d 754.)

For the appellant there was a brief by *McManus & Haukom* and *Jack McManus,* all of Madison, and oral argument by *Jack McManus.*

For the respondent the cause was argued by *Richard J. Boyd,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

BEILFUSS, J.   The defendant raises three issues:

1. Should a new trial be ordered because additional identification tests of physical evidence were conducted by the state crime laboratory after the preliminary examination and before trial without notice to defendant's counsel?

2. Was defendant denied due process of law and the right to be present at all proceedings when the jury, during its deliberations, exchanged written communications with the judge without notice to appellant or his counsel?

3. Should a new trial be ordered in the interest of justice pursuant to sec. 251.09, Stats.?

On June 27, 1969, in the city of Madison, the defendant Stewart sold a package purporting to contain the narcotic heroin to a police informant. On June 30, 1969, this package was turned over to John Linssen, a chemist with the Wisconsin department of justice, crime laboratory. Linssen analyzed the contents of the package and found it to be heroin. On July 25, 1969, a criminal complaint was issued charging the defendant Stewart with the intentional sale of heroin contrary to sec. 161.02, Stats. This complaint was filed in the county court of Dane county on August 4, 1969. The warrant was not served immediately because the defendant could not be found in the Madison area. He was eventually located in Las Vegas, Nevada, and in January, 1971, he was returned to Wisconsin through extradition proceedings.

A preliminary hearing was held on February 23, 1971. At the hearing Mr. Linssen testified as an expert witness to identify the contents of the package. Linssen stated that he used three tests to determine the package's contents and that he concluded it contained heroin. The three tests he used were ultraviolet spectrophotometry, gas chromatography, and thin-layer chromatography. He used a preliminary "spot test" also, but failed to mention it at the hearing. He testified that these tests are reliable and proved beyond a reasonable degree of chemical certainty that the substance in the package was heroin. The package of heroin was then marked and listed as Exhibit 1 and received into evidence. The defendant's counsel then cross-examined Linssen intensively as to his qualifications as an expert, the tests used, and the conclusion he arrived at. The court found probable cause and bound the defendant over for trial.

The defendant was then tried before a jury in the circuit court for Dane county on September 13 and 14, 1971.

At trial Mr. Linssen again testified and identified the substance as heroin. The defendant's counsel objected to this testimony on the grounds that no proper foundation was laid and the witness was incompetent. The objection was overruled. As the record indicates, a foundation was again laid and his competency established prior to this objection. Mr. Linssen, at trial, based his opinion not only on the three prior tests but also on an additional test known as infra-red spectrometer chromatography (hereinafter infra-red test). On cross-examination Linssen testified that this test was conducted after the preliminary but before trial. The test merely reaffirmed the prior tests that the package's contents were heroin. The defendant then objected to the use of the infra-red test and moved to dismiss the action or, in the alternative, a mistrial. The alleged ground for the objection was "surprise." The trial court pointed out that at

the preliminary hearing the defendant agreed to the withdrawal of the evidence (*i.e.*, Exhibit 1—the package of heroin), and placed it again in the custody and possession of Mr. Linssen until trial. The prosecution then stated that he told defense counsel after the preliminary hearing that if he wanted to he could have the material tested by his own chemist. Counsel said he did not want to test it. The court then overruled the motion and trial continued.

During its 1969 session the legislature substantially revised and enacted a new Criminal Procedure Code. Sec. 971.23 of the new code provides for pretrial discovery and inspection. Pursuant to sub. (5) of sec. 971.23, Stats., upon motion of a party (no motion was made herein), the court may order the production of physical evidence intended to be introduced at the trial for scientific analysis and may order the production of reports or results of any scientific tests. Sub. (7) provides for a continuing duty of disclosure of additional physical evidence and test reports.

Sec. 967.01, Stats., provides:

"**Title and effective date.** Title XLVII may be cited as the criminal procedure code and shall be interpreted as a unit. This code shall govern all criminal proceedings and is effective on July 1, 1970. It applies in all prosecutions commenced on or after that date. Prosecutions commenced prior to July 1, 1970, shall be governed by the law existing prior thereto."

Under the new code a prosecution is commenced upon the filing of a complaint.[1] Here the complaint was issued on July 25, 1969, and filed August 4, 1969.

The pretrial discovery and disclosure statutes have no application in this case for two reasons. The new code was not effective when this action was commenced and even if it was the defendant did not make the motion as required by statute.

[1] *See* secs. 967.05 (1) (a) and 968.02 (2), Stats.

It is equally clear that prior to the effective date of the new code that " '. . . Wisconsin does not recognize a right in defendant to a pretrial discovery of the prosecution's evidence. . . .' " [2]

The defendant further contends that if the pretrial discovery and disclosure statutes do not apply, then under Rule 303 of the American Law Institute's Model Code of Evidence, as adopted by this court in *Whitty v. State* (1967), 34 Wis. 2d 278, 294, 149 N. W. 2d 557, the evidence of the infra-red test should be excluded because it would " '(c) unfairly surprise a party who has not had reasonable ground to anticipate that such evidence would be offered.' " [3]

We believe the trial court properly received such evidence [4] and, in any event, we do not find an abuse of discretion. The defendant had pretrial access to the substance analyzed and knew scientific tests would be used to identify it. He also had a competent expert witness who did testify and who could evaluate the reliability of a properly conducted infra-red test. The evidence of the infra-red test was otherwise admissible and it did not constitute unfair surprise. [5]

The second major contention of the defendant is that he was denied his right to be present at all proceedings when the trial judge and the jury exchanged a written communication during the deliberations.

After the jury retired to deliberate, the trial judge received a communication from the jury which stated,

[2] *Abraham v. State* (1970), 47 Wis. 2d 44, 52, 176 N. W. 2d 349.

[3] *See Whitty v. State, supra,* page 294.

[4] There was no objection to this evidence when the testimony was given but a subsequent motion for dismissal or mistrial was made and denied.

[5] The defendant also made a claim of unauthorized use or tampering with evidence between the preliminary examination and the trial. We have examined the record and, under the facts of this case, find no merit in this contention.

"Why does the name of James E. Smith appear instead of James E. Stewart on exhibit #1 evidence card." The judge wrote on the note, "3:04 P. M.—I do not know—W. L. Jackman," and had the note returned to the jury.

The defendant's counsel states in defendant's brief that neither he nor the defendant were present in court at the time.

The defendant cites cases from several other jurisdictions which provide that any communication between the judge and the jury in the absence of counsel is improper and thereby requires a new trial. This is not the law in Wisconsin. Our rule provides that counsel has a right and a duty to be present when additional instructions are requested by the jury. *State v. Russell* (1958), 5 Wis. 2d 196, 92 N. W. 2d 210. However, this right may be waived by the absence of counsel from the courtroom during the regular session of the court. *State v. Ritchie* (1970), 46 Wis. 2d 47, 174 N. W. 2d 504, and *State v. White* (1972), 53 Wis. 2d 549, 193 N. W. 2d 36. When defense counsel is absent from the courtroom the judge can presume it was voluntary and a waiver on his part unless the judge has been informed to the contrary or the judge has personally taken the responsibility to see that counsel is notified. This responsibility cannot be cast upon the court by counsel to be called or to be searched out when counsel knows the court is in session. *State v. Ritchie, supra.* Counsel must assume the risk as to his own arrangements with the court in being notified when the jury seeks additional instructions during deliberations. *State v. Russell, supra.* Further, even if there was no waiver and the defense counsel was present in court, this court has held that a communication with the jury would still not be sufficient to warrant a new trial or reversal in the absence of prejudice—that is, the communication to the jury by the judge must con-

stitute prejudicial error. *Wegner v. Chicago & N. W. Ry. Co.* (1952), 262 Wis. 402, 55 N. W. 2d 420; *State v. Sawyer* (1953), 263 Wis. 218, 56 N. W. 2d 811; *Seitz v. Seitz* (1967), 35 Wis. 2d 282, 151 N. W. 2d 86; and *State v. White, supra.*

Even assuming that there was no waiver, the communication would only have been harmless error. The answer, "I do not know," was simply innocuous. It gave the jury no substantive information. If the communication did anything it benefited the defendant. The jury must have been in doubt as to the evidence card, otherwise the question would not have been asked. And the judge's reply simply cast more doubt as to its evidentiary weight. We conclude that the communication did not constitute prejudice to the defendant and is not a proper basis for a new trial.

The defendant's counsel contends he was in effect denied an opportunity to argue to the jury the significance of the different name attached to Exhibit 1. The exhibit was available to defendant's counsel before argument for his examination and nothing was kept from him before his argument. He cannot be heard to complain after the matter was submitted to the jury.

There has been no manifest injustice or probable miscarriage of justice to warrant the granting of a new trial or to reverse pursuant to sec. 251.09, Stats.

*By the Court.*—Judgment and order affirmed.